T.C. Summary Opinion 2018-23

UNITED STATES TAX COURT

CHINELO NWANKWO SUWAREH, Petitioner, AND LAMIN B. SUWAREH, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7233-16S.                      Filed April 16, 2018.

Chinelo Nwankwo Suwareh, pro se.

Lamin B. Suwareh, pro se.

Richard L. Wooldridge, for respondent.

SUMMARY OPINION

RUWE, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This proceeding was commenced under section 6015 for review of the Office of Appeals' final determination that petitioner is not entitled to relief from joint and several liability with respect to an understatement of Federal income tax reported on a joint Federal income tax return filed for 2011 and an underpayment of tax for 2012.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Ohio when she filed her petition. Intervenor resided in Ohio when he filed his notice of intervention.

Petitioner and intervenor were married in 2009 and divorced in 2015. Petitioner graduated with a bachelor's degree in finance from the University of Cincinnati in 2011 and has a history of working in financial services. During the years in issue, intervenor was employed as a registered nurse. Petitioner and

[1](...continued)
Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

intervenor had two wedding ceremonies: a wedding in the United States in 2011, and a traditional wedding in Africa in 2013.

Petitioner and intervenor filed a joint Federal income tax return for 2011, on which they reported income of $108,835 and an overpayment of $745. On their return, they claimed an education credit of $1,248 attributable to petitioner, and deducted a cash or check charitable contribution of $10,015 and a noncash charitable contribution of $7,500 for items contributed to Goodwill.

Petitioner and intervenor filed a joint Federal income tax return for 2012. On their return, they reported income of $118,591 and tax owed of $6,490. They failed to pay the reported tax owed.

On January 21, 2014, the Commissioner issued petitioner and intervenor a notice of deficiency for 2011 disallowing the claimed charitable contribution deductions and the education credit. Petitioner and intervenor did not petition this Court for redetermination of the amounts determined in the notice of deficiency.

In July 2014 petitioner and intervenor began living apart but did not legally separate. Petitioner was granted a decree of divorce on or about April 30, 2015.

On October 31, 2014, petitioner filed a Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability for 2011 and 2012. The Office of Appeals preliminarily determined that petitioner was entitled to full

relief for 2011 and partial relief for 2012. In response to the preliminary determination, intervenor filed a statement of disagreement. On December 30, 2015, the Office of Appeals issued a final determination denying petitioner's request for relief for both 2011 and 2012. On March 23, 2016, petitioner filed a petition with this Court.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is generally jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, a spouse who has previously filed a joint return may seek relief from joint and several liability under subsection (b), (c), or (f) of section 6015. Sec. 6015(a), (f). Under section 6015(b) and (c), relief is available only from an understatement or deficiency and not with respect to an underpayment of income tax reported on a joint return. Hopkins v. Commissioner, 121 T.C. 73, 88 (2003). When the liability arises from an underpayment of tax reported as due on the return, relief is available only under section 6015(f). Hopkins v. Commissioner, 121 T.C. at 88; Boyle v. Commissioner, T.C. Memo. 2016-87, at *7. Accordingly, relief may be

available for petitioner under section 6015(b), (c), or (f) for 2011, but only under section 6015(f) for 2012.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004). Both the scope and standard of review in cases requesting relief from joint and several income tax liability are de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

A. Relief Under Section 6015(b)

Section 6015(b) requires a taxpayer seeking relief from joint and several liability to satisfy five conditions: (1) a joint return was filed for the taxable year; (2) there is an understatement of tax attributable to erroneous items of the taxpayer's spouse; (3) the taxpayer establishes that in signing the return, he or she did not know, and had no reason to know, that there was an understatement; (4) taking into account all facts and circumstances, it would be inequitable to hold the taxpayer liable for the deficiency in tax for the year attributable to the understatement; and (5) the taxpayer timely elects relief under section 6015(b). These conditions are stated in the conjunctive, and the taxpayer must satisfy all five in order to be awarded relief. See Alt v. Commissioner, 119 T.C. at 313.

A taxpayer requesting relief under section 6015(b) must show that the understatement of tax is attributable to an erroneous item of the nonrequesting spouse. Generally, an erroneous item is attributed to the individual whose activities gave rise to the item. Sec. 1.6015-1(f)(1), Income Tax Regs. In deciding attribution of erroneous items, the Court has attributed items to the spouse who wrongfully reported or claimed the items on the return. See Kellam v. Commissioner, T.C. Memo. 2013-186.

The understatement arising from the education credit is attributable to expenses that petitioner allegedly incurred as a student, and is therefore attributable to her. At trial petitioner seems to have testified that the amount deducted for the noncash charitable contribution for 2011 arose from donations that she made to Goodwill. Therefore, the understatement arising from the noncash charitable contribution is attributable to petitioner.

Section 6015(b)(1)(C) requires that the taxpayer requesting innocent spouse relief establish that in signing the return, he or she did not know, and had no reason to know, that there was an understatement. A taxpayer who signs a return is generally charged with constructive knowledge of its contents. Porter v. Commissioner, 132 T.C. at 211. If a taxpayer is aware of the circumstances giving

rise to the understatement, then the taxpayer has reason to know of it. See id. at 212; see also sec. 1.6015-2(c), Income Tax Regs.

Although petitioner testified that she did not sign the joint Federal income tax return for 2011, the weight of the evidence shows that she did. Her signature on the 2011 tax return appears identical to the signature on her Social Security card, her petition, her request for innocent spouse relief, and an identity theft affidavit signed by petitioner and attached to the 2011 tax return. At trial petitioner conceded that the signature on the 2011 tax return is "very similar to * * * [her] signature", but she then alluded to the possibility of intervenor's forging her signature. However, petitioner presented no evidence that intervenor forged her signature.

We do not credit petitioner's testimony that she did not sign the 2011 tax return, and we therefore conclude that petitioner had constructive knowledge of its contents. Petitioner at the very least had reason to know that the amounts claimed for the noncash charitable contribution, the cash charitable contribution, and the education expense credit were erroneous. She testified at trial that when she saw the amounts claimed for charitable contributions, she was "flabbergasted". Thus, petitioner does not meet the third requirement of section 6015(b), and we need not

decide whether she meets the other requirements of section 6015(b). Accordingly, petitioner does not qualify for relief under section 6015(b) for 2011.

B. Relief Under Section 6015(c)

Under section 6015(c), a divorced or separated spouse may elect to limit liability for a deficiency on a joint return to the portion of the deficiency allocable to him or her under subsection (d). The election may be filed at any time after the deficiency is "asserted" but not later than two years after the Secretary has begun collection activities. Sec. 6015(c)(3)(B). The electing individual: (1) must no longer be married to or must be legally separated from the individual with whom the joint return was filed or (2) must not have been a member of the same household with the individual with whom the joint return was filed during the 12-month period before the election was filed. Sec. 6015(c)(3)(A)(i).

Petitioner and intervenor started living apart in July 2014, and petitioner submitted her request for innocent spouse relief on October 31, 2014. Thus, petitioner was a member of the same household during the 12-month period before she filed her request for innocent spouse relief. Petitioner and intervenor were neither divorced nor legally separated when she filed her request. Accordingly, petitioner is not eligible for innocent spouse relief under section 6015(c) for 2011.

C. Relief Under Section 6015(f)

1. Threshold Conditions

A spouse may be entitled to equitable relief under section 6015(f) if he or she is not eligible for relief under subsection (b) or (c). Under subsection (f), the Secretary is directed to prescribe procedures to aid in administering the statute. These procedures, set forth in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, outline seven threshold conditions that must be satisfied for the Commissioner to grant relief under section 6015(f). Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. We consider these factors in the light of the particular facts and circumstances, but we are not bound by them. See Molinet v. Commissioner, T.C. Memo. 2014-109.

Respondent concedes that petitioner satisfies threshold conditions 1 through 6. Thus, we focus only on condition 7, which requires that "[t]he income tax liability from which the requesting spouse seeks relief * * * [be] attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income" unless a specific exception applies. Rev. Proc. 2013-34, sec. 4.01(7). The Commissioner may consider granting relief regardless of whether the underpayment or understatement is attributable to the requesting spouse if any of the following exceptions applies:

(1) attribution is solely due to operation of community property law; (2) nominal ownership; (3) misappropriation of funds; (4) abuse; or (5) fraud committed by the nonrequesting spouse. See id. sec. 4.01(7).

As previously discussed, the erroneous education credit and the noncash charitable contribution deduction for 2011 are attributable to petitioner. Petitioner has not presented any evidence that the charitable cash contribution was attributable to intervenor except for her unverified and self-serving testimony. We decline to accept her testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The underpayment for 2012 resulted from petitioner's and intervenor's underwithholding of their income tax liability. Accordingly, petitioner does not satisfy threshold condition 7 with respect to the understatement for 2011 and satisfies it for the underpayment for 2012 only with respect to the amount of the underpayment resulting from intervenor's underwithholding, unless an exception applies.

In her request for innocent spouse relief, her petition, and at trial, petitioner alleged that she was abused by intervenor. The Court does not treat such allegations lightly, but we will not accept a taxpayer's uncorroborated abuse claims at face value. See, e.g., Pullins v. Commissioner, 136 T.C. 432, 454 (2011); Johnson v. Commissioner, T.C. Memo. 2014-240, at *13-*14. The only

evidence that petitioner provided besides vague testimony was a letter written to the innocent spouse examiner by petitioner's sister, in which she discussed allegations of abuse relayed to her by petitioner. Petitioner did not present her sister as a witness at trial, and the letter falls short of the substantiation needed to sustain an abuse allegation. Accordingly, petitioner does not meet any of the exceptions to threshold condition 7, and we will therefore only evaluate whether petitioner is entitled to relief for the portion of the underpayment for 2012 attributable to intervenor's underwithholding.

### 2. Streamlined Conditions

The revenue procedure lays out three streamlined conditions that, if fulfilled, will result in relief under section 6015(f). Those conditions are that: (1) the requesting spouse is no longer married to the nonrequesting spouse when the Commissioner makes his determination; (2) the requesting spouse would suffer economic hardship if relief were not granted; and (3) the requesting spouse did not know or have reason to know of the understatement or underpayment. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

Petitioner was no longer married to the nonrequesting spouse when the Office of Appeals made its determination. Thus, she satisfies the first condition. Petitioner has not presented specific evidence that she will suffer economic

hardship if relief is not granted. Her testimony regarding her income and expenses conflicted with the information that she provided in her request for innocent spouse relief. In her request, she claimed to have $1,700 of income per month, and $1,529 of expenses. Her largest claimed expense was a monthly "[r]ent or mortgage" payment of $500. However, she testified at trial that she does not actually make that payment each month. Given this conflicting information, we cannot determine that petitioner will suffer economic hardship if denied relief.

Petitioner has not presented evidence that she did not know or have reason to know of the underpayment and that the reported liability for 2012 would not be paid, except for testimony that we do not credit. She claims that she was unaware of her family's financial situation and intervenor's income and that she never saw the return. The 2012 return was filed electronically, and there is no written signature. However, on her request for innocent spouse relief, she stated that she was aware of intervenor's income for 2012. Further, she testified that she and intervenor maintained a joint bank account for wedding purchases. Thus, petitioner should have had reason to know of the amount of money spent directly on weddings purchases. Additionally, petitioner and intervenor had a wedding ceremony in Africa in 2013. Petitioner testified that she contributed $4,000 for the airline tickets. It is unclear what expenses came from the joint bank account, but it

is inconceivable that petitioner did not have at the very least an idea of the amounts. By 2012 petitioner had a bachelor's degree in finance and had reason to know that she and intervenor would not be able to pay their 2012 tax liability with their level of spending. Petitioner had reason to know of the underpayment and does not fulfill the conditions for streamlined relief.

    3. Facts and Circumstances Test

A requesting spouse who satisfies the threshold conditions but not the streamlined conditions may still qualify for relief under the facts and circumstances test. Petitioner satisfies the threshold conditions with respect to the underpayment attributable to intervenor. Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, sets forth seven nonexclusive factors to be considered in determining whether a requesting spouse is entitled to equitable relief under section 6015(f): (1) marital status; (2) economic hardship; (3) knowledge or reason to know that the tax liability would not be paid; (4) legal obligation to pay the outstanding income tax liability; (5) receipt of significant benefit from the unpaid income tax liability; (6) compliance with the income tax laws; and (7) the mental or physical health of the requesting spouse. All of these factors are to be weighted appropriately, and no one factor is determinative. See Pullins v. Commissioner, 136 T.C. at 448; Kellam v. Commissioner, at *26.

With respect to the marital status factor, petitioner and intervenor were no longer married when the Office of Appeals made its determination. The marital status factor weighs in favor of relief. See Rev. Proc. 2013-34, sec. 4.03(2)(a).

As discussed above when considering petitioner's entitlement to streamlined relief, there is no evidence that petitioner will suffer economic hardship in the absence of relief. This factor is neutral. See id. sec. 4.03(2)(b).

As discussed above in considering petitioner's entitlement to streamlined relief, she had reason to know that the 2012 tax liability would not be paid. The knowledge factor weighs against relief. See id. sec. 4.03(2)(c)(ii).

With respect to the legal obligation factor, petitioner and intervenor's divorce decree does not allocate responsibility for paying the 2012 tax liability. Accordingly, this factor is neutral. See id. sec. 4.03(2)(d).

With respect to the significant benefit factor, there is ample evidence that petitioner received a significant benefit from the 2012 underpayment. Clearly, funds were used to pay for the second wedding ceremony and a trip to Africa. This factor weighs against relief. See id. sec. 4.03(2)(e).

With respect to the compliance factor, the record is unclear as to whether she is in compliance. With respect to the health factor, there is no evidence that

petitioner was in poor physical or mental health when the 2012 tax return was filed or at the time she requested relief. This factor is neutral. See id. sec. 4.03(2)(g).

On the basis of the record, we find that petitioner has failed to carry her burden of establishing that it would be inequitable to hold her liable for the understatement for 2011 and the underpayment for 2012. Accordingly, petitioner is not entitled to innocent spouse relief for 2011 or 2012.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for respondent.